**REID COLLINS & TSAI LLP**
Marc S T Dworsky (State Bar No. 157413)
4450 Via Alegre
Santa Barbara, CA 93110
(626) 429-4022
mdworsky@reidcollins.com

**REID COLLINS & TSAI LLP**
Minyao Wang*
Yonah Jaffe*
420 Lexington Avenue
Suite 2731
New York, NY 10170
(212) 344-5200
mwang@reidcollins.com
yjaffe@reidcollins.com

**REID COLLINS & TSAI LLP**
Jonathan M. Kass*
300 Delaware Avenue, Suite 770
Wilmington, DE 19801-6600
(302) 467-1765
jkass@reidcollins.com

*Pro hac vice* applications forthcoming

*Counsel for Petitioner*

**LABATON SUCHAROW LLP**
Ira A. Schochet*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0864
Facsimile: (212) 883-7064
ischochet@labaton.com

*Additional Counsel*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Application of<br><br>507 SUMMIT LLC,<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery For Use In a Foreign Proceeding. | Case No. 23-_____<br><br>**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND .................................................................................................4

    A.    The Company and the Merger ........................................................................4

    B.    Mr. Hsu's Central Role in the Merger ...........................................................7

    C.    The Appraisal Proceeding ...............................................................................8

ARGUMENT ...........................................................................................................................9

I.    The Application Satisfies the Statutory Requirements of Section 1782 ...................9

    A.    Mr. Hsu "Reside" or Is "Found" in This District.........................................9

    B.    Petitioner Seeks Discovery "For Use" in a Foreign Proceeding..............10

    C.    Petitioner Is an "Interested Person" .............................................................11

II.    The Discretionary *Intel* Factors Weigh in Favor of Granting the Application .....................12

    A.    *Intel* Factor I: Mr. Hsu Is a Nonparticipant in the Appraisal Proceeding .................12

    B.    *Intel* Factor II: The Cayman Court Is Receptive to U.S. Judicial Assistance ...........13

    C.    *Intel* Factor III: The Application Is Not an Attempt to Circumvent Cayman Law .............................................................................................................15

    D.    *Intel* Factor IV: The Discovery Sought Is Not Unduly Burdensome.......................15

CONCLUSION ......................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
  673 F.3d 76 (2d Cir. 2012)...............................................................................9

*De Leon v. Clorox Company*, No. 19-mc-80296-DMR,
  2020 WL 4584204 (N.D. Cal. Aug. 10, 2020)...............................17, 19,20

*Ex parte Rigby,*
  No. 13CV0271-MMA MDD, 2013 WL 622235 (S.D. Cal. Feb. 19, 2013) .................................9

*Herring v. Clark*,
  No. 1 :05-CV-00079-LJO, 2011 WL 2433672 (E.D. Cal. June 14, 2011) ....................................3

*HRC-Hainan Holding Co., LLC v. Yihan Hu*,
  No. 19-mc-80277-TSH, 2020 WL 906719 (N.D. Cal. Feb. 25, 2020) .............................17

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
  No. 19-mc-80215-WHO(TSH), 2020 WL 820327 (N.D. Cal. Feb. 19, 2020) ..........................16

*In re: Application of Joint Stock Co. Raiffeinsenbank*,
  No. 16-MC-80203-MEJ, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016). ......................................18

*In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding by Athos Asia Event Driver Master Fund*,
  No. 4:21-mc-00153-AGF, 2021 WL 1611673 (E.D. Mo. Apr. 26, 2021)............................10-11

*In re Application of Akebia Therapeutics, Inc. for an Order Granting Leave to Issue Subpoena for the Taking of Discovery Pursuant to 28 U.S.C. 1782.*,
  No. CV 14 80294 MISC, 2014 WL 12845006 (N.D. Cal. Oct. 21, 2014) ...............................11

*In re Credit Suisse Virtuoso*,
  No. 21-mc-80308-JCS, 2022 WL 1786050 (N.D. Cal. June 1, 2022) ............................16

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019)................................................................10, 16

*In re Hattori*,
  No. 21-mc-80236-TSH, 2021 WL 4804375 (N.D. Cal. Oct. 14, 2021) ......................................15

*In re Hopkins*,
  No. 20-mc-80012-SVK, 2020 WL 733182 (N.D. Cal. Feb. 13, 2020).........................................14

*In re Illumina Cambridge Ltd.*,
  No. 19MC80215WHOTSH, 2019 WL 5811467 (N.D. Cal. Nov. 7, 2019) ...............................17

*In re Kingstown Partners Master Ltd.*,
  No. 21-MC-691-LTS, 2022 WL 1081333 (S.D.N.Y. Apr. 8, 2022) .......................................10, 16

*In re Koninklijke Philips N.V.*,
  2018 WL 620414 (S.D. Cal. Jan. 30, 2018).............................................................12, 15

ii

*In re Liverpool Ltd. P'ship*,
No. 21-MC-86-CFC, 2021 WL 3793901 (D. Del. Aug. 26, 2021)................................ 16

*In re Michael Eric A.B. Mak*,
No. C 12–80118 SI, 2012 WL 2906761 (N.D. Cal. July 16, 2012)........................ 11

*In re Mireskandari*,
No. 12-cv-2865-IEG (DHB), 2012 WL 12877390 (S.D. Cal. Dec. 20, 2012). ...... 15, 17

*In re MoneyOnMobile, Inc.*,
2019 WL 2515612 (N.D. Cal. June 18, 2019) ........................................................9-10

*In re Nouvel*, LLC,
No. 2:22-MC-00004-MCS-E, 2022 WL 2901715 (C.D. Cal. July 22, 2022)................ 16

*In re Penner*,
No. 17-cv-12136-IT, 2017 WL 5632658 (D. Mass. Nov. 22, 2017) ........................ 14

*In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*,
No. C18-1673JLR, 2019 WL 291673 (W.D. Wash. Jan. 23, 2019) ........................ 15

*In re Platinum Partners Value Arbitrage Fund L.P.*,
583 B.R. 803 (Bankr. S.D.N.Y. 2018) .................................................................... 14

*In re Republic of Ecuador*,
No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) ................ 12

*In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*,
555 F.2d 720 (9th Cir. 1977).................................................................................... 11

*In re Rule 45 Subpoena Issued to Robert K. Kochan*,
No. 5:07-MC-44-BR, 2007 WL 4208555 (E.D.N.C. Nov. 26, 2007)............................3

*In re Wallis*,
No. 18-mc-80147-DMR, 2018 WL 5304849 (N.D. Cal. Oct. 24, 2018) .................... 12

*In re Wireless Facilities, Inc. Derivatives Litig.*,
562 F. Supp. 2d 1098 (S.D. Cal. 2008) .................................................................... 10

*Intel Corp. v. Advanced Micro Devices, Inc.*
542 U.S. 241, 244-245 (2004)..........................................................................*passim*

*Qualcomm Inc for an Order Pursuant to 28 U.S.C. § 1782*,
No. 18-mc-80134-NC, 2018 WL 6660068 (N.D. Cal. Dec. 19, 2018)........................ 11

*Siemens AG v. W. Digital Corp.*,
No. 8:13–cv–01407–CAS–(AJWx), 2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) .................... 13

**Rules**

28 U.S.C. § 1782(a) ....................................................................................................9

Fed. R. Civ. P. 26(b)(1)............................................................................................ 16

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

507 Summit LLC ("507 Summit" or "Petitioner")[1] hereby respectfully submits this application (the "Application"), pursuant to 28 U.S.C. § 1782 ("Section 1782"), seeking a Court order that authorizes Petitioner to serve the proposed subpoena, attached to the Declaration of Minyao Wang (the "Wang Decl.") as Exhibit A (the "Subpoena"), on Christopher Chungyi Hsu ("Mr. Hsu" or "Respondent"), and grants any and all other relief to Petitioner as the Court deems just and proper.  The proposed Subpoena requests both document discovery and deposition testimony from Mr. Hsu, for use in an appraisal proceeding (the "Appraisal Proceeding") pending in the Cayman Islands in which the Financial Services Division of the Grand Court of the Cayman Islands (the "Cayman Court") will determine the fair value of Petitioner's shares in 51job, Inc. ("51job" or the "Company").  51job is a Chinese company, incorporated in the Cayman Islands and listed on the NASDAQ exchange in the United States, that was recently taken private in a $4.3 billion merger transaction (the "Merger") orchestrated by insiders for a share price that Petitioner contends was woefully inadequate.  Petitioner has dissented under Cayman law with respect to the Merger and is pursuing the Appraisal Proceedings to recover the full value of its 51job shares.

This Application is supported by the Declaration of Samuel Martin Pierce Dawson (the "Dawson Decl."), an attorney admitted to practice law in the Cayman Islands and the Declaration of Minyao Wang, a New York attorney.

Pursuant to Local Rule 7-2(b)(1), Petitioner states that it cannot presently schedule a date and time for a hearing on this Application, should a hearing be necessary, as no judicial assignment has been made.

## PRELIMINARY STATEMENT

Petitioner respectfully submits this Application pursuant to Section 1782 to obtain targeted and important discovery for use in the Appraisal Proceeding.  Mr. Hsu played a central role in the Merger.  He is the sole director of Rocketeer Management ("RM"), which served as the "strategic consultant" to the Company and represented the Company in extensive negotiations with members of the Buyer Group and other key stakeholders.  The evidence that Petitioner seeks from Mr. Hsu is

---

[1] Petitioner 507 Summit is a member of the group of dissenting shareholders who formerly held shares in the Company and are parties to the Appraisal Proceeding.

directly relevant to the central issues in the Appraisal Proceeding: the negotiation, re-negotiation, and ultimate approval of the Merger for a price that was significantly lower than what the buyers originally offered in a binding agreement, and the fair value of Petitioner's (and the other dissenting shareholders') 51job shares.  The Cayman Court cannot order discovery from Mr. Hsu because it does not have personal jurisdiction over him.  However, the Cayman Court welcomes litigants to use evidence obtained through U.S. courts by means of Section 1782.  Accordingly, Petitioner submits this Application to obtain discovery from Mr. Hsu, who is subject to the jurisdiction of this Court, to assist the Cayman Court in determining the fair value of Petitioner's 51job shares.

The Application satisfies the statutory requirements of Section 1782:  (i) Mr. Hsu "resides" or is "found" in this District because Mr. Hsu is a resident of this District or at least has sufficient contacts with this District to warrant the exercise of this Court's personal jurisdiction; (ii) the requested discovery is "for use" in a foreign proceeding; and (iii) Petitioner is an "interested person."  28 U.S.C. § 1782(a) (2018).  Furthermore, each of the four discretionary factors, identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, that a district court may consider in deciding whether to grant discovery under Section 1782 weigh decisively in favor of granting the Application. 542 U.S. 241, 244-245 (2004).

*First*, Petitioner cannot use the Cayman legal process to compel discovery from Mr. Hsu because he is neither a party to the Appraisal Proceeding, nor is he subject to the jurisdiction of the Cayman Court.

*Second*, the Cayman Court is receptive to assistance afforded by U.S. federal courts through Section 1782.  As Mr. Dawson has explained in his declaration, the Cayman Court has emphasized that judges in appraisal proceedings need access to all available information concerning valuation to determine the fair value of the shares, including evidence from outside the Cayman Islands. Dawson Dec. ¶¶ 13, 15; (discussing *Qihoo 360 Technology Co. Ltd.* 2017 (2) CILR 585).  For instance, in recent appraisal cases, pursuant to Section 238 of the Cayman Islands Companies Act (as revised) ("Section 238"), the Cayman Court has considered, *inter alia*, documents that may be relevant to the valuation of the shares at issue and evidence as to whether the deal process itself was open, competitive, and fair.  *See In the Matter of Qunar Cayman Islands Limited v. Athos Asia*

2

1    *Event Driven Master Fund et al.* 2018 (1) CILR 199 ("it should be a general obligation of the

2    company to search for and produce all documents relevant to fair value."); *see also In the Matter of*

3    *Trina Solar Limited* (Unreported, Grand Court, Segal J, 23 September 2020) (considering conduct-

4    related factors when determining fair value).  Dawson Decl. ¶¶ 20-21.

5         *Third*, the Application is not an attempt to circumvent any restrictions imposed by Cayman

6    law on proof gathering.  Rather, the scope of discovery is broad under Cayman law and Cayman

7    courts welcome the introduction of foreign evidence obtained through Section 1782.  There is no

8    express prohibition against obtaining the evidence sought herein under Cayman law generally or in

9    any of the orders entered to date by the Cayman Court in this appraisal proceeding. Moreover, the

10   requested discovery does not implicate any privilege or protection that would make its admission

11   improper under Cayman law.

12        *Fourth*, the discovery Petitioner is seeking herein is not unduly intrusive or burdensome.

13   Mr. Hsu played a critical role in the Merger and he no doubt has discovery in his possession,

14   custody, or control that is directly relevant to the central issues in the Appraisal Proceeding.[2] The

15   Application requests discovery that is tailored to be directly relevant to the critical issues in the

16   Appraisal Proceeding, such as the fair value of Petitioner's 51job shares, and the processes by

17   which the Company and the Special Committee negotiated, recommended, and approved the

18   Merger and why the Company permitted the purchasers to renege on an earlier offer which, while

19   still not providing fair value to dissenting shareholders, was superior to the Merger proposal that

20   was ultimately consummated.

21        The Application satisfies the statutory requirements of Section 1782, the *Intel* factors, and is

22   fully consistent with the policies behind Section 1782.  Accordingly, the Application should be

23   granted.

24   _____

25        [2] It is appropriate, and not unduly burdensome, for Petitioner to also seek production of RM
     documents from Mr. Hsu because Mr. Hsu has legal control of documents in the possession of RM.
26   Directors of companies are routinely held to have possession, custody, or control of their
     companies' documents. *Herring v. Clark*, No. 1 :05-CV-00079-LJO, 2011 WL 2433672, at *5 (E.D.
27   Cal. June 14, 2011); *see also In re Rule 45 Subpoena Issued to Robert K. Kochan*, No. 5:07-MC-44-
     BR, 2007 WL 4208555, at *4 (E.D.N.C. Nov. 26, 2007) ("the courts have enforced subpoenas for
28   records of a party corporation directed to a non-party employee of the corporation when the
     employee has control over the records within the meaning of Rule 45.").

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

**FACTUAL BACKGROUND**

**A.     The Company and the Merger**

Based in Shanghai and founded in 1998, 51job is a leading provider of human resources services in China.  The Company's online recruitment platforms are well-known throughout the global Chinese-speaking world.  Prior to the Merger, 51job's shares were listed (through American Depository Receipts) on the NASDAQ exchange under the symbol "JOBS."

In September 2020, during the height of the COVID-19 pandemic, DCP Capital Partners II, L.P. (collectively with its affiliates, "DCP"), an Asian private equity firm, made an offer to take the Company private for $79.05 per share.  Wang Decl. Ex. B at 77-78.  In response, the Company formed a special committee (the "Special Committee"), consisting of two purportedly independent directors, Li-Lan Cheng and Eric He, to evaluate and consider the proposal.  *Id.*  at 79.  Following its formation, the Special Committee retained legal counsel and Duff & Phelps as its financial advisor.  *Id* at 79-80.  On May 1, 2021, counsel for DCP requested the Special Committee's consent to form a buyer consortium (the "Buyer Group") that included DCP, Ocean Link Partners ("Ocean Link") and Mr. Rick Yan, the Company's director, CEO and president.  *Id.* at 87.  On May 4, 2021, the Special Committee granted consent to form the Buyer Group.  *Id.*  On the same day, DCP updated its offer to reflect the additional buyers.  *Id.*  However, the Merger consideration for the updated offer remained at $79.05 per share.  *Id.*  Recruit Holdings Co., Ltd. ("Recruit"), a Japanese online recruitment company that held a 35% stake in the Company, later signed an agreement with the Buyer Group and the Company to support the Merger, in return for the ability to convert a substantial portion of its then current holding of 51job common stock into the ability to participate in the upside of the new entity formed by the Merger. *See* Wang Decl. Ex. G.

51job and the Buyer Group, with the legally binding support from Recruit, signed a Merger agreement on June 21, 2021, to take the Company private for the original offer price of $79.05 per share.  *See id.* at 95.  Duff & Phelps provided a fairness opinion in support of the Merger. *Id*. at 131.  The fairness opinion "estimated the value of each ADS [of the Company] to range from US$73.18 to US$86.94.  *Id.*

4

Petitioner and other dissenting shareholders in the Appraisal Proceeding contend that this proposed price of $79.05 per share severely undervalued the Company and was opportunistically timed to take advantage of the temporary economic dislocation caused by COVID-19 to deprive minority shareholders of the fair value of their ownership stakes in the Company. [3]  The Merger proposal contained glaring procedural deficiencies.  For example, the Merger agreement did not require approval by a majority of the minority shareholders ("MoM Protection"), a common corporate law device used to protect minority shareholders from controlling shareholders.  *See id.* at 91 and 92 ("Upon further discussions, the Special Committee decided to forgo the 'majority of the minority vote' voting requirement"). Under Cayman law, the Merger would need to be approved by two thirds of the shares present at a special meeting called to consider the proposal.

The Buyer Group, together with Recruit's support, controlled 56.1% of the vote. *Id.* at 7. This means the Buyer Group, if allowed to vote, would need to garner only a small percentage of the unaffiliated shareholders to ensure approval of the Merger.  Thus, the Special Committee should have insisted that the Buyer Group abstain from voting to approve the Merger.  Because the Special Committee failed to do so, shareholder approval of the Merger was almost a foregone conclusion. And while the Merger agreement purported to require a 30-day post-shop period, the Buyer Group, which comprised a majority of the voting shares, had agreed contractually not to vote for any alternative transaction. *Id.* at 142-43.  This assured no market interest for an alternative proposal.

On July 6, 2021, the Company filed a Schedule 13E-3 form and draft proxy statement, which incorporated Duff & Phelps's fairness opinion, with the Securities and Exchange Commission (the "SEC") in connection with the original Merger proposal.  *See* Wang Decl. Ex. D. The proxy statement projected a Merger closing date in the second half of 2021.  *Id.* at 62-63. However, subsequent to the filing of the Schedule 13E-3 form, the Company ceased communications with its shareholders regarding the Merger proposal.  This unusual and unexplained radio silence caused the Company's share price to drop to as low as $60 per share.

---

[3] On January 15, 2020, just before Covid-19 became endemic in China and paralyzed much of its economy, the Company's share price traded as high as $91.75.

1        On November 8, 2021, approximately four months after the filing of the Schedule 13E-3

2   form, the Company finally issued a press release vaguely disclosing that certain members of the

3   Buyer Group had been in consultation with Chinese regulators on the "recent regulatory changes" in

4   China that might be applicable to the Merger proposal.  *See* Wang Decl. Ex. H.  The overdue press

5   release did not explain what "regulatory changes" it was alluding to.  By then, the Company's

6   shares closed as low as $43 per share, due in large part to the lack of transparency concerning the

7   status of the Merger.  Neither the Company nor the Buyer Group has ever offered an adequate

8   public explanation regarding this purported need to consult with Chinese authorities and the

9   resulting significant delay in closing the Merger.

10       On January 12, 2022, the Buyer Group revised its offer to take the Company private by

11  reducing Merger consideration to $57.25 per share.  Wang Decl. Ex. C at 51.  This new offer

12  represented a drastic 28% reduction from the original offer price of $79.05.  Then, on March 1,

13  2022, the Company announced it had agreed to a revised Merger price of $61 per share, which was

14  a 23% decrease from the original Merger price (and 34% lower from the Company's pre-pandemic

15  trading price of $91.75) and reflected only a modest increase from the Buyer Group's "lowball"

16  offer from January 2022.  *Id.* at 54-55.  Duff & Phelps provided an updated fairness opinion for the

17  revised Merger deal.  *Id.* at 75-78.  Despite the fact that the Merger price fell significantly outside

18  the range of fair value ($73.18 to $86.94) provided in Duff and Phelps's original fairness opinion

19  from only six months earlier, Duff & Phelps's updated fairness opinion concluded that the revised

20  deal terms were fair.  *Id.* at 267. The Company never explained the purported legal basis under

21  which the Buyer Group reneged on the earlier Merger proposal and why the Company took no legal

22  action against the Buyer Group for breaching that legally binding agreement.

23       The revised Merger agreement again contained no MoM Protection.  *Id.* at 49.  Based on the

24  revised proxy statement, it appears that this issue was not seriously revisited by the Special

25  Committee even though the deal terms were now even less favorable to the public shareholders.

26  And while the Merger agreement was subject to a (materially shortened) 15-day go-shop period that

27  began on March 1, 2022, again no interested bidders emerged as a result of the Buyer Group's

28  publicly announced refusal to consider an alternative transaction.  *See id.* at 53-55.

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

1     On March 29, 2022, the Company filed a revised proxy statement with the SEC that

2   contained the Special Committee's recommendation that shareholders approve the revised Merger

3   offer.  Wang Decl. Ex. E.  An extraordinary general meeting of the Company's shareholders was

4   held on April 27, 2022.  Given that the Buyer Group controlled a majority of the voting shares, the

5   Merger was predictably approved by the Company's shareholders. Wang Decl. Ex. I. The Merger

6   was officially consummated on May 6, 2022, and the Company was delisted from the NASDAQ

7   exchange. Wang Decl. Ex. J.

8       **B.      Mr. Hsu's Central Role in the Merger**

9     Mr. Hsu is the sole director of RM.  Dawson Decl. ¶ 8. Mr. Hsu boasts that he is "one of the

10  world's leading negotiators and dealmakers."  Wang Decl. Ex. O. According to the Company's

11  proxy statement, the Company engaged RM as its "strategic consultant" in September 2020, at the

12  initial stage of the Merger process.  RM was retained to "explore potential strategic transactions,

13  including possible minority or control transactions, mergers and acquisitions, debt financings or

14  equity financings." Wang Decl. Ex. C at 41. The proxy statement asserted that the Company

15  "wanted to evaluate strategic options in light of the impact of the COVID-19 pandemic" even

16  though it "was not actively seeking a potential buyer." *Id*. Mr. Hsu thereafter played a critical role

17  in every step of the Merger process, up until the consummation of the Merger almost two years

18  later, in May 2022. The following illustrative examples amply document Mr. Hsu's integral

19  involvement in the Merger process:

20

21      1.      RM contacted DCP on behalf of the Company and was instrumental in getting DCP to
              make an initial offer to take the Company private. Before DCP formally submitted the
22            offer to the Company, RM first discussed the offer with DCP and thereafter RM
              discussed with the Company DCP's interest in purchasing the Company (*Id*);

23

24

25

26

27

28

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

2.  RM was in communications with lenders regarding potential debt financing for the Merger (*Id.*);

3.  RM attended a call with the Company's Board during which the Board decided to appoint the Special Committee. During that call, RM "reviewed" the offer from DCP with the Board. (*Id.* at 42);

4.  RM communicated extensively with Recruit before Recruit committed to support the Buyer Group's offer to take the Company private (*Id.* at 43, 44 and 45);

5.  RM attended multiple meetings with the Special Committee to discuss the Merger (*Id.* at 45 and 46);

6.  RM held extensive discussions with Mr. Yan in connection with Mr. Yan's decision to join the Buyer Group (*Id.* at 44-44);

7.  RM participated in the negotiations between the Buyer Group and the Company (*Id.* at 49); and

8.  RM was actively engaged in the renegotiation of the Merger (*Id*. at 52-54).

**C.    The Appraisal Proceeding**

On July 15, 2022, the Appraisal Proceeding was commenced in the Cayman Islands under Section 238.  Dawson Decl. Ex. 4.  Petitioner (along with the other dissenting shareholders) and the Company each have retained and disclosed a valuation expert to assist the Cayman Court in arriving at a fair valuation of 51job shares.  Dawson Decl. ¶ 11.

Under Cayman law, when determining fair value, the court may examine both intrinsic valuation issues related to 51job and, as it relates to the fairness of the deal price, the procedural fairness and robustness of the Merger process from which it resulted.  *Id.* ¶¶ 14-20.  Petitioner and the other dissenting shareholders will have the opportunity to present, *inter alia*, documentary evidence, expert valuation evidence, witness testimony, and legal arguments to the Cayman Court. Cayman law permits litigants to obtain discovery from third parties located in the Cayman Islands, but Cayman courts do not have the power to compel discovery from third parties, such as Mr. Hsu, that are located elsewhere and not subject to Cayman jurisdiction.  *Id.* ¶¶ 28-30.

Accordingly, Petitioner seeks leave of this Court to serve a subpoena on Mr. Hsu for documents, information, and deposition testimony related to the Merger for use in the Appraisal Proceeding.  Given Mr. Hsu's central role as the strategic advisor to the Company in connection with the Merger, Petitioner seeks documentary discovery and testimony from him on issues relevant

8

to the Appraisal Proceeding, including, without limitation: (i) the fairness of the original Merger price and the revised Merger price; (ii) the rationale for failing to force the Buyer Group to comply with the original Merger agreement, renegotiating with the Buyer Group and accepting the revised lower Merger price, (iii) the process leading to the approval of initial and final prices for the Merger; (iv) financial analysis, email or other correspondence, meeting minutes, and any other materials used, reviewed, or prepared by or provided to Mr. Hsu or RM; (v) the lack of MoM Protection; and (vi) alternative bids to acquire the Company, if any.

## **ARGUMENT**

### I.   THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782

Section 1782 authorizes a U.S. court to order any person that resides in or is found in its judicial district to give testimony or produce documents for use in a foreign proceeding upon the application of any person with an interest in that proceeding.  28 U.S.C. § 1782(a).  *Id.*; *see also Intel*, 542 U.S. at 249.  Section 1782 "has, over the years, been given increasingly broad applicability." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (internal quotation marks omitted).  The twin purposes of Section 1782 are to "provide 'equitable and efficacious' discovery procedures in United States courts for the benefit of tribunals and litigants involved in litigation with international aspects" and to encourage foreign courts to reciprocate for U.S.-based litigation and parties.  *Id.* (internal quotation marks omitted).

The Application easily satisfies all three statutory elements.

### A.   Mr. Hsu "Reside" or Is "Found" in This District

With respect to natural persons, courts in this Circuit have determined that Section 1782's requirement that a respondent "reside[s] or is found" in a district is satisfied when a person is a resident of the district.  *See, e.g.*, *Ex parte Rigby,* No. 13CV0271-MMA MDD, 2013 WL 622235 *2 (S.D. Cal. Feb. 19, 2013) (a person residing in the Southern District of California was required to respond to a Section 1782 application filed in that district); *In re MoneyOnMobile, Inc.,* 2019 WL

9

2515612, at *2 (N.D. Cal. June 18, 2019) (a person who lived "Cupertino, California" was properly subject to a Section 1782 application filed in the Northern District of California).[4]

Under this standard, Mr. Hsu resides or is found in this District. *First*, reliable commercial databases confirm that Mr. Hsu is a resident at 2153 North First Avenue, Upland, California, which is in this District. Wang Decl. ¶ 23. It appears that Mr. Hsu's parents also reside at that address. *Id.* ¶ 24. *Second*, Respondent recently agreed to produce documents in this District and sit for a deposition pursuant to a different Section 1782 application filed in this District.  *See* Wang Decl. Ex. M. *Third*, Respondent was charged in 2018 in a criminal matter in the Superior Court of California in Orange County, part of this District, and he recently completed his four-year long probation stemming from that matter.  Wang Decl. ¶ 27.  *Fourth*, Petitioner understands that Mr. Hsu has a California voter registration connected to the same Upland address and he also has an active California driver's license. *Id.*  ¶¶ 25-26.

Accordingly, the Application satisfies Section 1782's first statutory requirement.

**B.     Petitioner Seeks Discovery "For Use" in a Foreign Proceeding**

Petitioner will use the requested discovery in the Appraisal Proceeding to establish the fair value of its 51job shares.  Courts in the United States have held that seeking discovery for use in appraisal actions in the Cayman Islands satisfies the statutory requirement of "for use" in a "foreign proceeding."  *See, e.g.*, *In re Kingstown Partners Master Ltd.*, No. 21-MC-691-LTS, 2022 WL 1081333, at *4-5 (S.D.N.Y. Apr. 8, 2022) (standard met for dissenters in Cayman appraisal action even after deadline for expert reports on valuation had expired); *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding by Athos Asia Event Driver Master Fund*, No. 4:21-mc-00153-AGF, 2021 WL 1611673, at *2 (E.D. Mo. Apr. 26,

---

[4] Other courts have concluded that, for purposes of Section 1782, whether a person or entity is "found" in a district is coextensive with the constitutional parameters of personal jurisdiction.  *See In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) ("We hold, accordingly, that § 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process.").  The facts recited herein would satisfy this test too in light of Mr. Hsu's extensive contacts with this District, as discussed herein. *See In In re Wireless Facilities, Inc. Derivatives Litig.*, 562 F. Supp. 2d 1098, 1103 (S.D. Cal. 2008) (applying the "continuous and systematic" test for personal jurisdiction).

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

1    2021) (dissenting shareholders in a Cayman appraisal case "clearly seek discovery of materials 'for

2    use' in a foreign proceeding").

3         Furthermore, to satisfy the statutory "for use" requirement, a petitioner is not required to

4    demonstrate that the discovery sought would be discoverable or admissible in the foreign

5    proceedings.  *In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*, 555 F.2d

6    720, 723 (9th Cir. 1977) ("admissibility before such tribunals of the testimony or material sought"

7    was not a proper factor to evaluate); *In re Michael Eric A.B. Mak*, No. C 12–80118 SI, 2012 WL

8    2906761, at *1 (N.D. Cal. July 16, 2012) (whether the proposed discovery "would be admissible in

9    Hong Kong's Courts is therefore not an issue in the instant request for discovery."). Rather, a

10   petitioner must simply show that the discovery being sought is "tethered to a specific foreign

11   proceeding and is relevant." *Qualcomm Inc for an Order Pursuant to 28 U.S.C. § 1782*, No. 18-mc-

12   80134-NC, 2018 WL 6660068, at *2 (N.D. Cal. Dec. 19, 2018).

13        The discovery requested by Petitioner is relevant to the determination of the fair value for

14   the dissenting shareholders' 51job shares and will be used solely for the Appraisal Proceeding.[5]

15   Petitioner intends to provide, consistent with the routine practice in Cayman appraisal litigation, the

16   documents and deposition testimony obtained from this Application to its expert and the competing

17   expert appointed by the Company.  The Cayman Court will rely heavily on the testimony of those

18   experts.  *See* Dawson Decl. ¶ 13.  This clearly satisfies the "for use" requirement.

19        Therefore, the Application satisfies Section 1782's second statutory requirement.

20   **C.    Petitioner Is an "Interested Person"**

21        "[A] complainant in a foreign proceeding 'possess[es] a reasonable interest in obtaining

22   [judicial] assistance,' and therefore qualifies as an 'interested person' within any fair construction of

23   that term." *Akebia Therapeutics*, 2014 WL 12845006 (quoting *Intel*, 542 U.S. at 256).  Because

24

25

26   _____
     [5] There is no question that the Cayman Court constitutes a "foreign tribunal" within the
     meaning of Section 1782.  *In re Application of Akebia Therapeutics, Inc. for an Order Granting
27   Leave to Issue Subpoena for the Taking of Discovery Pursuant to 28 U.S.C. 1782.*, No. CV 14
     80294 MISC, 2014 WL 12845006 (N.D. Cal. Oct. 21, 2014) ("In the Ninth Circuit, Section 1782 is
28   read broadly to include 'bodies of a quasi-judicial or administrative nature' as well as preliminary
     investigations leading to judicial proceedings.").

                                                    11

1    parties to foreign proceedings are "interested persons" under Section 1782, Petitioner, a party to the

2    Appraisal Proceeding, qualifies as an "interested person" for the purposes of this Application.  *Id.*

3             Accordingly, the Application also satisfies Section 1782's third statutory requirement.

4    **II.      The Discretionary *Intel* Factors Weigh in Favor of Granting the Application**

5             Once Section 1782's statutory requirements are met, this Court has discretion to grant the

6    Petition. *Intel*, 542 U.S. at 264.  In determining whether to grant the Application, the Court should

7    look to the four *Intel* factors.  *Id.* at 244-245.  All four of these factors strongly favor granting the

8    Application.

9             **A.      *Intel* Factor I: Mr. Hsu Is a Nonparticipant in the Appraisal Proceeding**

10            The Supreme Court has explained that when a respondent is not a party to the foreign

11   proceeding, "[its] evidence, available in the United States, may be unobtainable absent § 1782(a)

12   aid." *Intel*, 542 U.S. at 264.  That is precisely the situation here: Mr. Hsu is not a party to the

13   Appraisal Proceeding.  Moreover, he is beyond the jurisdictional reach of the Cayman courts.

14   Dawson Decl. at ¶¶ 29-30.  This means that Petitioner has no practical way to obtain the highly

15   relevant evidence in Mr. Hsu's possession, custody or control, other than discovery by way of

16   Section 1782.

17            Accordingly, the first *Intel* factor—which asks whether the party from whom the discovery

18   is sought is a party to the foreign proceeding—strongly supports granting the Application.  *In re*

19   *Wallis*, No. 18-mc-80147-DMR, 2018 WL 5304849, at *4 (N.D. Cal. Oct. 24, 2018) (finding that

20   the first *Intel* factor weighed in favor of issuing the subpoenas because none of the respondents

21   were participants to the litigation and the discovery by the proposed subpoenas is currently outside

22   the reach of the foreign court); *In re Koninklijke Philips N.V.*, 2018 WL 620414, at *2 (S.D. Cal.

23   Jan. 30, 2018) ("Here, Respondent is not a party to the foreign proceeding. Thus, this factor weighs

24   in favor of granting the Application."); *In re Republic of Ecuador*, No. C-10-80225 MISC CRB

25   (EMC), 2010 WL 3702427, at *3 (N.D. Cal. Sept. 15, 2010) ("[Respondent] is not a party in the

26   international arbitration, and therefore this factor weighs in the [petitioner's] favor.").

27

28

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

**B.**    *Intel* **Factor II: The Cayman Court Is Receptive to U.S. Judicial Assistance**

Under the second *Intel* factor, courts may "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.  For this factor to count against discovery, a respondent in a Section 1782 application is required to submit "authoritative proof" that the foreign jurisdiction is not receptive to discovery assistance from the United States. *Siemens AG v. W. Digital Corp.*, No. 8:13–cv–01407–CAS–(AJWx), 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013).

Mr. Hsu cannot meet this heavy burden. As explained in the Dawson Decl., Cayman courts are receptive to using evidence obtained through US discovery procedures.  Dawson Decl. ¶¶ 21-26. Indeed, the Cayman Islands Court of Appeal ("CICA") expressly held in *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited*, that the right to obtain full discovery, including pre-trial deposition testimony, under Section 1782 "is a right conferred by U.S. law-it is *not a right* conferred by, or *to be withheld under Cayman law*." *Id*. ¶¶ 22-24 (citing *Lyxor* and emphasis added here).  Moreover, the CICA has underscored that third-party materials are relevant in Section 238 proceedings.  *Id*. ¶ 21 (quoting *Re Qunar Cayman Islands Limited* (Unreported, CICA, April 10, 2018, CICA No 24 of 2017) for the proposition that "if third party valuations in the possession of the Company are relevant, so are third party valuations not in the possession of the Company. . . ."). CICA decisions are binding on the Cayman Court.  *Id*. ¶ ¶15, 22.

As noted, the Cayman Court will consider all evidence that may be relevant to the valuation of the shares at issue in the Section 238 proceeding.  Dawson Decl. ¶¶ 13-20.  For example, the CICA held in *Qihoo 360 Technology Co. Ltd.* 2017 (2) CILR 585 that "[t]he sole task of the court is to determine the fair value of the dissenters' shares. To do that, it needs full information." *Id.* ¶ 15 (discussing *Qihoo*) and Exhibit 8 to Dawson Decl.  This process of considering all relevant information often requires significant discovery.  As the CICA noted in *Shanda Games Limited* [2018 (1) CILR 352], "[s]ince the fair value is not necessarily the same as the merger price or the price at which the shares were trading before the market in them was affected by knowledge of the merger, it is inevitable that the determination will involve an assessment of a substantial quantity of

13

1    information relating to the financial affairs of the company whose shares are to be valued." *Id.* ¶ 15

2    and Ex. 7 to Dawson Decl.

3         The Cayman Court will also consider evidence as to whether the deal process itself was

4    open, competitive, and fair. *See* Dawson Decl. Ex. 1 (*In the Matter of Nord Anglia Education, Inc.*

5    (Unreported, 17 March 2020)) (considering several conduct-related factors when considering the

6    reliability of the deal price as a guide to the fair value of the dissenting shareholders' shares); *see*

7    *also* Dawson Decl. Ex. 2(*In the Matter of Trina Solar Limited* (Unreported, Grand Court, Segal J,

8    23 September 2020)) (same).

9         Furthermore, U.S. courts, including this Court, have consistently recognized that Cayman

10   courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such

11   evidence may not be independently discoverable or available under Cayman law. *FourWorld Event*

12   *Opportunities, LP v. Houlihan Lokey, Inc.*, No. 1:21-mc-1019-CAS (JPR), ECF No. 56 (C.D. Cal.

13   Jan. 6, 2022) (granting document and deposition discovery for use in Cayman Islands appraisal

14   proceeding) (Wang Decl., Ex. K); *In re Hopkins*, No. 20-mc-80012-SVK, 2020 WL 733182, at *3

15   (N.D. Cal. Feb. 13, 2020) (granting application where "there is no indication that the Cayman

16   Islands court would not be receptive to the information sought by [petitioner]."); *In re Platinum*

17   *Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("Cayman courts

18   are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence

19   may not be discoverable under Cayman law") (citations omitted); *In re Penner*, No. 17-cv-12136-

20   IT, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (Cayman court "is open to receiving § 1782

21   discovery"). Indeed, this Court has granted a Section 1782 application against Respondent for a

22   different Cayman Islands appraisal case in which Mr. Hsu also served as a consultant to the subject

23   company. *See* Wang Decl. Ex. N.

24        Here, the Cayman Court, in a Directions Order entered in the Appraisal Proceeding

25   following a hearing, acknowledges the possibility that foreign discovery applications, including

26   applications under Section 1782, may be brought and requires applicants to "make all reasonable

27   efforts to do so expeditiously." Dawson Decl. Ex. 5 at ¶ 47; *see also id.* ¶¶ 47-48, 50-52 (setting

28   forth timing and procedural requirements regarding the filing of third-party discovery applications);

Dawson Decl. ¶ 25 (the Cayman Court "considered and approved of the prospect of parties seeking relief under Section 1782"). As a result, there can be no plausible argument that the Cayman Court is not open to Section 1782 discovery in the Appraisal Proceeding.

Accordingly, the second *Intel* factor weighs heavily in favor of granting the Application.

### C.    *Intel* Factor III: The Application Is Not an Attempt to Circumvent Cayman Law

The third *Intel* factor asks "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *See Intel*, 542 U.S. at 264-265. This factor supports discovery unless the foreign court affirmatively disallows the petitioner from obtaining the discovery sought. *In re Koninklijke Philips*, 2018 WL 620414, at *2 (The third *Intel* factor met because "Applicant is unaware of any English rule or policy that prohibits the gathering of the evidence sought."); *see also In re Hattori*, No. 21-mc-80236-TSH, 2021 WL 4804375, at *4 (N.D. Cal. Oct. 14, 2021) (discovery is favored "unless the foreign tribunal in question has expressly made it clear that it would not accept the evidence.").

As explained in Section II.B, the Cayman Court welcomes evidence that a party can obtain by using Section 1782. There is no Cayman law or Cayman decision that would prohibit the introduction of Section 1782 evidence. Dawson Decl. ¶ 21. Nor has the Cayman Court denied a request for the discovery sought by this Application.[6] *Id.*

Accordingly, the third *Intel* factor also weighs in favor of granting the Application.

### D.    *Intel* Factor IV: The Discovery Sought Is Not Unduly Burdensome

Under the fourth *Intel* factor, a court may consider whether the discovery requests are "unduly intrusive or burdensome" and should be "rejected or trimmed." *Intel*, 542 U.S. at 265. The standard used to evaluate whether a discovery request is burdensome is the same standard that

---

[6] Petitioner does not have to exhaust discovery efforts in the foreign proceeding before resorting to Section 1782. *De Leon v. Clorox Company*, No. 19-mc-80296-DMR, 2020 WL 4584204, at *8 (N.D. Cal. Aug. 10, 2020) (no requirement to first seek discovery in foreign tribunal); *In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*, No. C18-1673JLR, 2019 WL 291673, at *5 (W.D. Wash. Jan. 23, 2019) ("[A]n applicant need not exhaust, or even commence, its discovery efforts in the foreign proceeding before resorting to § 1782."). Moreover, the Court is not required to determine whether the evidence obtained from Respondents would be discoverable or admissible in the foreign proceedings. *In re Mireskandari*, No. 12-cv-2865-IEG (DHB), 2012 WL 12877390, at *3 (S.D. Cal. Dec. 20, 2012).

15

applies to any federal civil litigation.  *In re Credit Suisse Virtuoso*, No. 21-mc-80308-JCS, 2022 WL 1786050, at *12 (N.D. Cal. June 1, 2022) ("The proper scope of [discovery] under § 1782 is generally determined by the Federal Rules of Civil Procedure.").  Under this standard, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Generalized assertions about burden are not sufficient; respondent must instead establish undue burden with specificity.  *In re Nouvel*, LLC, No. 2:22-MC-00004-MCS-E, 2022 WL 2901715, at *5 (C.D. Cal. July 22, 2022) ("Conclusory, unsupported statements of expense and burden are insufficient to demonstrate why the requested discovery is objectionable.").

The discovery requested by Petitioner here fully complies with the standard of proportionality and reasonableness.  The topics set forth in the Subpoena are consistent with the discovery granted in comparable recent cases.  *See, e.g.*, *Kingstown*, 2022 WL 1081333, at *6 (scope of discovery was appropriate given "the substantial amount in controversy in the FGL Appraisal, Respondents' access to information relevant to that proceeding, and the parties' resources."); *In re Liverpool Ltd. P'ship*, No. 21-MC-86-CFC, 2021 WL 3793901, at *3 (D. Del. Aug. 26, 2021) ("The scope of the categories of subject matter sought by the subpoena is reasonable given the nature of and BofA Securities' role in the transactions at issue in the appraisal action.").  Moreover, Mr. Hsu already provided comparable discovery in response to a Section 1782 application filed in this District in connection with another Cayman appraisal case. Wang Decl. Ex. N. [7]  The Merger was a complex $4.3 billion corporate transaction and the Subpoena is designed to seek only documents and information directly relevant to core issues in the Appraisal Proceeding,

---

[7] Courts commonly order production of responsive discovery that a respondent has in his or her possession, custody, or control, regardless of the physical location of that discovery, especially for documents and information that are located in electronic storage that can be accessed from any location.  *See, e.g.*, *De Leon*, 2020 WL 4584204, at *5-6; *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215-WHO(TSH), 2020 WL 820327, at *10 (N.D. Cal. Feb. 19, 2020); *del Valle Ruiz*, 939 F.3d at 532-533 (Section 1782 may apply outside the United States). To the extent that Mr. Hsu has responsive documents located outside the United States, he is obligated to produce them.

16

1   including: (i) the fairness of the original Merger price and the revised Merger price, and the process

2   leading to their approval by the Special Committee and the Company's Board; (ii) why the

3   Company permitted the Buyer Group to renege on the initial Merger proposal, (iii) financial

4   analysis, email or other correspondence, meeting minutes, and any other materials used, reviewed,

5   or prepared by, or provided to Mr. Hsu or RM; (iv) Mr. Hsu's and RM's communications with all

6   other key stakeholders; (v) any alternative bids to acquire the Company; and (vi) the shareholders'

7   approval of the Merger, including the absence of MoM Protection.  These issues will be central in

8   the Appraisal Proceeding and are appropriately subject to discovery through Section 1782. [8]

9          As for the requested deposition testimony, courts in this Circuit have found that depositions

10  "are standard practice in U.S. civil litigation and are not burdensome."  *In re Illumina Cambridge*

11  *Ltd.*, No. 19MC80215WHOTSH, 2019 WL 5811467, at *5 (N.D. Cal. Nov. 7, 2019); *see also*

12  *Mireskandari*, 2012 WL 12877390, at *4 ("The Court finds that these deposition topics are

13  appropriate, as they are relevant to Applicant's claim.").  This finding is based on the presumption

14  that "[t]he Rules of Civil Procedure themselves ensure that the length, time and place of the

15  deposition do not impose an undue burden."  *See HRC-Hainan Holding Co., LLC v. Yihan Hu*, No.

16  19-mc-80277-TSH, 2020 WL 906719, at *15 (N.D. Cal. Feb. 25, 2020) (citing Fed. R. Civ. P.

17  45(d)(1)).  A deposition of Mr. Hsu will yield relevant testimony that will significantly aid the

18  Cayman Court in determining the fair value of the dissenting shareholders' former stakes in the

19  Company.  As noted by Mr. Dawson, the Cayman Court has the discretion to admit U.S. style

20  deposition transcripts. Dawson Decl., ¶¶ 22, 24, 31-33.  Indeed, transcript from a Section 1782

21  deposition was admitted recently in a Cayman appraisal proceeding.  *Id*. at ¶ 33.

22

23

24

25          [8] The potential but uncertain possibility that Petitioner *may* obtain some of the discovery
    requested herein from a party in the Appraisal Proceeding is not a basis to deny this Application.
26  This Court already held that a Section 1782 petitioner was "entitled to, just as someone would be in
    conducting discovery in a regular civil case in the United States, to test two productions against
27  each other and . . . to ask you for documents to ensure that . . . what they are getting from the
    Company is exhausted and vice versa." *FourWorld Event Opportunities, LP v. Houlihan Lokey,*
28  *Inc.*, No. 21- mc-1019, ECF No. 40, at 26-27 (C.D. Cal. Nov. 22, 2021) (Wang Decl. Ex. L at 27).

17

While Petitioner does not foresee any burden issues in light of the Subpoena's reasonable scope, Petitioner is willing to meet and confer in good faith with Mr. Hsu to address any concerns that he may have.[9]  Accordingly, the fourth *Intel* factor weighs in favor of granting the Application.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant the Application for an order pursuant to 28 U.S.C. § 1782.

Dated: March 31, 2023      By:    */s/ Marc S T Dworsky*

**REID COLLINS & TSAI LLP**
Marc S T Dworsky (State Bar No. 157413)
4450 Via Alegre
Santa Barbara, CA 93110
(626) 429-4022
mdworsky@reidcollins.com

**REID COLLINS & TSAI LLP**
Minyao Wang*
Yonah Jaffe*
420 Lexington Avenue
Suite 2731
New York, NY 10170
(212) 344-5200
mwang@reidcollins.com
yjaffe@reidcollins.com

**REID COLLINS & TSAI LLP**
Jonathan M. Kass*
300 Delaware Avenue, Suite 770
Wilmington, DE 19801-6600
(302) 467-1765
jkass@reidcollins.com

*Counsel for Petitioner*

**LABATON SUCHAROW LLP**
Ira A. Schochet*
140 Broadway
New York, NY 10005

---

[9] For example, Petitioner is open to deposing Respondent through an electronic platform to reduce any supposed burden on him. In addition, approving this Application will not preclude Mr. Hsu from meeting and conferring with Petitioner or ultimately "from bringing a motion to quash or modify" the discovery sought if no agreement is reached. *In re: Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *7 (N.D. Cal. Nov. 2, 2016). Courts expect parties in the first instance to attempt to resolve their differences without judicial intervention regarding the scope of a subpoena.  *See De Leon*, 2020 WL 4584204, at *9.

18

1

2

Telephone: (212) 907-0864
Facsimile: (212) 883-7064
ischochet@labaton.com

3

*Additional Counsel*

4

\**Pro hac vice* applications forthcoming

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782